CITY OF YOUNGSTOWN, APPELLEE, *v.* THE YOUNGSTOWN & SUBURBAN RY. CO., APPELLANT.

(No. 2611—Decided April 5, 1940.)

*Mr. John A. Willo,* director of law, and *Mr. Israel Freeman,* for appellee.

*Messrs. Mitchell & Mitchell,* for appellant.

NICHOLS, P. J. The Youngstown & Suburban Railway Company is a corporation, organized and existing under the laws of the state of Ohio and is engaged in the transportation of persons and property, as a common carrier, and at all times herein referred to it has been the owner of a right of way within the corporate

limits of the city of Youngstown, a municipal corporation, on which right of way the company's railroad tracks, etc., are located. The right of way of the railway company passes through a somewhat closely built-up residential section of the city.

Prior to April 26, 1930, the city adopted legislation designed to appropriate fourteen grade crossings over the right of way and tracks of this railway company, in accordance with the provisions of the General Code of Ohio relating thereto. The railway company opposed the construction of the fourteen grade crossings and instituted legal proceedings to prevent such crossings until the provisions of Section 8896 *et seq.*, General Code, had been complied with.

While this litigation was pending, the parties reached an agreement with respect to crossings over the railway company's tracks and right of way and thereafter, pursuant to an ordinance of the city, duly adopted, the parties entered into an agreement in the following form:

"Grade Crossing Contract Under G. C. 8863

"This agreement, made and dated as of the 26th day of April, 1930, by and between the city of Youngstown, county of Mahoning and state of Ohio, a municipal corporation, party of the first part, and The Youngstown & Suburban Railway Company, a corporation, having its principal office and place of business at 21 East Front street, Youngstown, Ohio, party of the second part, witnesseth:

"That whereas, first party is desirous of providing public facilities for crossing the right of way of second party in the city of Youngstown at convenient intervals between Florida avenue on the north and Lowell avenue on the south, and city council has instituted certain legislation preliminary to appropriating such rights in said right of way owned by second party as are necessary for opening public streets across the tracks of second party at the following streets; that is to say:

(1) Lowell avenue; (2) Hollywood avenue; (3) Clarencedale avenue; (4) Boston avenue; (5) Avondale avenue; (6) Ravenwood avenue; (7) Hilton avenue; (8) Aburndale avenue; (9) Brooklyn avenue; (10) Philadelphia avenue; (11) Florida avenue; (12) La-Belle avenue; (13) Judson avenue; and (14) Lucius avenue.

"And whereas, second party has opposed the construction of fourteen public grade crossings by dedicated highways across its said tracks as proposed by the city and has instituted legal proceedings to prevent the opening of said crossings until the provisions of Sections 8896 *et seq.*, of the General Code, have been complied with but second party recognizes that a reasonable number of crossings in said district are necessary and is willing to cooperate with first party in establishing the same; and,

"Whereas, the parties hereto have reached a settlement between themselves with respect to said crossings, and now desire to embody the terms thereof in a written agreement, to the end that the litigation aforesaid may be withdrawn, and certain crossings may be duly dedicated and opened by consent, and certain paving assessments may be paid by second party, each party hereto making concessions as mutual consideration for the execution hereof;

"Now, therefore, in consideration of the premises, the concessions aforesaid, and such action on the part of each of the parties hereto, as the promises of the other party may lead and induce it to take, it is mutually covenanted and agreed by and between first and second parties with respect to said grade crossings as follows:

"First: Upon execution hereof second party will release to first party such rights and easements as may be necessary to open and dedicate a public highway across the right of way of second party at the following streets, to wit: Lucius avenue, Hilton avenue, Florida

avenue, Boston avenue, Ravenwood avenue and Lowell avenue. Provided, however, and it is hereby expressly stipulated that second party may and does reserve the full right to lay, re-lay and remove at will such other and additional tracks on its right of way aforesaid, at said crossings as will in its sole judgment be requisite for the proper operation of its railroad; and, second party further stipulates that the release of a portion of its said right of way shall not be construed as a limitation upon or surrender of any portion of its right to operate trains, cars and engines over its rails and right of way.

"Second: Upon adoption of a resolution by the board of directors of second party, releasing certain crossings as herein provided, both parties hereto agree to join in an application to the Court of Common Pleas for an order of court approving the construction of grade crossings at the several streets selected by the city and released by second party, the said order of court to provide that said crossings shall be maintained in accordance with the provisions of the General Code of Ohio and the orders of the Public Utilities Commission by the second party.

"Third: For itself, its successors and assigns, the second party agrees to pay its pro-rata assessment per abutting foot front for improving and paving Cottage Grove avenue from Florida avenue to Midlothian boulevard, and to pay such assessments when made, but not to exceed a total amount of twenty-five thousand dollars ($25,000), to the end that the improvement and paving of said Cottage Grove avenue between such termini will afford reasonable access by the public across its tracks when used in connection with the highway crossings hereinbefore agreed by it to be opened across its right of way. It being expressly agreed, however, that the payment of such paving assessment is voluntary and made by the second party for the purposes aforesaid and shall not constitute a precedent by

second party to pay other and future assessment of like character.

"Fourth: It is further agreed that so soon as second party delivers to the first party proper quit-claim deeds securing the rights and easements to open the crossings specified in section one hereof to the first party, that first party shall thereupon cause to be repealed all legislation looking to the appropriation of the streets crossing the tracks of the second party and hereinbefore mentioned, and second party agrees to dismiss its action seeking to restrain first party from appropriating said crossings.

"Fifth: Without qualifying or restricting the lawful rights of the city to exercise all powers conferred upon it by statutes now existing or hereafter enacted, and without waiving or conveying rights in excess of those which may by law be lawfully waived or conveyed, it is mutually covenanted and agreed that such action as is taken by the second party in pursuance hereto is the consideration for the abandonment by first party of the appropriation proceedings above mentioned, the parties being moved to the execution hereof by their desire to reduce the number of grade crossings in the city and to provide for the public the best and safest and adequate mode of access to both sides of the railway right of way in the district hereinbefore mentioned.

"In testimony whereof, the parties have hereunto affixed their respective signatures to duplicate copies, by the hands of their proper officers, being thereunto duly authorized in the premises.

"City of Youngstown
"John E. Jones
"By Joseph L. Heffernan
"Carl Armstrong, Board of Control
"The Youngstown & Suburban Ry. Co.
"By H. J. German
"President."

The parties to this contract complied with the provisions thereof, the railway company granting to the city a right of way or easement across its tracks and right of way at six of the fourteen streets originally contemplated by the city. Proceeding was duly instituted in the Common Pleas Court for an order of that court approving the construction of grade crossings at the six streets selected by the city and agreed to by the railway company, and an order of the Common Pleas Court was duly made approving such grade crossings and ordering the same to be maintained by the railway company in accordance with the provisions of the General Code and the orders of the Public Utilities Commission. Subsequently, the railway company paid its pro rata assessment per abutting foot front for improving and paving Cottage Grove avenue, in the amount of approximately $16,000.

Subsequent to the execution of the contract above set out, the city duly adopted an ordinance repealing its former legislation looking to the establishment of the fourteen grade crossings across the railway company's tracks and right of way. In the period of almost ten years subsequent to the execution of the contract of April 26, 1930, that section of the city, wherein the fourteen streets, embraced within the original legislation relating to the establishment of grade crossings over the tracks and right of way of the railway company, are located, became more closely built up and more densely populated, to the end that the city desired to establish grade crossings over the tracks and right of way of the railway company at three additional streets of the original fourteen. Before proceeding to that end the city filed this action in the Court of Common Pleas against the railway company, alleging in its petition that a controversy has arisen between the parties, in view of the terms and provisions of the executed contract, as to the right of the city to now appropriate easements across the defendant's right of way

and tracks for street purposes on Philadelphia avenue, Brooklyn avenue, and Avondale avenue, and as to the rights of the defendant to damages for violation of the contract in the event the city should seek to appropriate easements across the defendant's right of way and tracks for the three named streets, all of which were among the fourteen streets embraced within the original legislation of the city hereinabove referred to.

The Common Pleas Court entered its declaratory judgment, finding that the proposed appropriation proceeding for the three additional crossings would not constitute a breach of the contract, and incidentally no damages would accrue to the railway company as for a breach of that contract.

Appeal upon questions of law and fact has been prosecuted to this court from the judgment of the Common Pleas Court. Neither party has objected to the hearing and determination of this appeal as one upon law and fact although it may be seriously doubted whether such an appeal is proper. In any event, however, the defendant below had the right to prosecute an appeal to this court upon questions of law, and since no evidence additional to that taken in the Common Pleas Court has been offered here and a complete transcript of such evidence is now before the court in the form of a bill of exceptions, we deem it unimportant to determine whether we should pass upon the appeal as one of law and fact or one of law only in view of the final decision at which this court has arrived.

It is the contention of defendant that only one possible meaning can reasonably be assigned to this contract, namely, that grade crossings at Brooklyn, Avondale and Philadelphia avenues were forever abolished. It is argued that it is difficult to conceive that the parties to this agreement intended that after defendant had granted the city six grade crossings without cost and had agreed to pay up to $25,000 for paving a street parallel to its right of way, so as to provide proper

access to these six crossings, the city should be free at any time thereafter to ignore its agreement and to institute proceedings to open grade crossings at Brooklyn, Avondale and Philadelphia avenues, and thereby open the very dispute which the contract was intended to end.

It is further contended by defendant that the city is, in view of this contract, without power to adopt legislation which will impair the validity of its contract with the railway company. It is not contended by defendant that viaducts over the tracks can not be installed when, and if, the volume of traffic in the city is so great that such viaducts are justified, and defendant concedes that the city reserved its rights to install overhead crossings; but it is contended that having once invoked the grade crossing act, so called, and having entered into a contract with the railway company to reduce the number of grade crossings in that district, the city can not now in good faith repudiate its contract, retain the consideration paid, and set up three hazardous new crossings, it being argued that such a construction of the agreement will not only be adverse to the public welfare but will also violate every principle of public honor.

In support of its contention defendant calls attention to the fact that the agreement entered into between the parties is entitled "Grade crossing contract under G. C. 8863," and further that the language of the contract expressly indicates the intention of the parties to limit forever the number of public grade crossings over its right of way and tracks in the locality served by the original fourteen streets. Defendant argues that as it gave up, as consideration for the contract, its legal right to oppose all grade crossings at any of these streets, and as it granted to the city, without remuneration therefor, an easement to cross its tracks and right of way at six of these streets, and, further, as it paid the cost of paving Cottage Grove avenue, it would be

inequitable to permit the city to repudiate the contract without placing the railway company *in statu quo* or entitling it to damages for breach of the contract.

On the other hand, it is contended by plaintiff that the only right given up by the city in exchange for the privileges granted by the railway company was the abandonment of the then pending proceeding to appropriate and establish the fourteen grade crossings in accordance with the city's original intention, and it is pointed out that by express provision in the contract, under the fifth clause thereof, it was specifically agreed that the city in executing the contract was not qualifying or restricting its lawful rights to exercise all power conferred upon it by the statutes then existing or thereafter enacted, and was not waiving or conveying rights in excess of those which could be lawfully waived or conveyed. In that connection it is argued by counsel for plaintiff that by the contract the city abandoned only the appropriation proceedings then pending for the remaining eight crossings without in any way impairing the right of the city in the future, by action of its future legislative body, to proceed, when the necessities and convenience of the public so demanded, to institute new proceedings for the purpose of establishing new additional grade crossings, and it is further argued that in the event the city, in a future action instituted for that purpose in the Common Pleas Court, secured a judgment showing the necessity and the right to cross at grade, the city was, in no manner, to be liable to the defendant for damages or compensation for such crossing rights as the railway company gave the city pursuant to the contract of April 26, 1930, and was, in no manner, to be liable to the defendant for such moneys as defendant paid out in contributing to the cost of paving Cottage Grove avenue. In this connection it is argued by plaintiff that the council of the city, in office at the time the 1930 contract was entered into, was without legal power or authority to hamper,

abridge or foreclose the right and duty of a future council to take such action as it might find proper for the necessity and convenience of the future residents of the city.

We are not here concerned with the question whether additional grade street crossings over the right of way and tracks of the railway company are now required for the convenience and necessity of the inhabitants of the city, as that is for the determination of the Common Pleas Court when, and if, a proceeding is instituted by the city to obtain the authority of that court to construct such crossings at grade, overhead, or by underpass. Unquestionably, the General Code provisions authorize the council to institute such proceedings in the Common Pleas Court, and the contract in question specifically reserves the right of the city so to do. Such recitals of the contract as indicate the then' intention of the parties are in no wise inconsistent with the reservation therein to the city of the right to proceed under all existing provisions of the Code or provisions which may thereafter be adopted.

The provisions of Section 8897 *et seq.,* General Code, relating to the establishment, method of construction and maintenance of street crossings over railroad tracks, while indicating an inclination toward the elimination of grade crossings, do not in fact prohibit such crossings. The authority therein granted to the city to institute proceedings for the establishment of street crossings over railroad tracks is a continuing grant of power to be exercised whenever the legislative authority of the city shall deem it proper for the convenience and necessity of the inhabitants of the city, and it can not be conceived that the council of the city in 1930 could forever hamper and deprive future councils of invoking the benefits of these statutes.

Keeping in mind the provisions of item "Fifth" of the contract of April 26, 1930, and interpreting the contract from all its provisions in the light of the pur-

poses sought to be accomplished by the parties, what must we find to be the reasonable intendment and implications thereof inducing the railway company to grant to the city the easement over its right of way and tracks for the six designated streets then selected by the parties? We think the purposes sought to be accomplished are fairly set forth in the instrument, wherein it is recited that the parties are "moved to the execution hereof" by their desire to reduce the number of grade crossings in the city and "to provide for the public the best and safest and adequate mode of access" to both sides of the railroad right of way in the district wherein the fourteen streets are located. It was not within the power of the parties to determine for themselves whether any or all of the contemplated crossings were to be at grade, it being specifically provided by the General Code provisions that no grade crossings could be established except upon the consent and approval of the Common Pleas Court upon petition filed for that purpose. The railway company doubtless desired to provide by the contract against the contingency that the Common Pleas Court would grant the right of the city to construct all fourteen crossings at grade.

It has been here argued on behalf of defendant, and it may be conceded as a fact, that street crossings at grade over the railway company's tracks would create an undesirable condition in the operation of its trains, exposing the railway company to actions for damages resulting from accidents at such crossings. By the contract the railway company relieved itself for a reasonable time of such undesirable condition in connection with eight of the fourteen streets, and in exchange for the benefits resulting therefrom agreed to and did convey an easement to the city for the right to cross the railroad tracks for the six streets named, and in fact by this agreement, for a period of more than ten years, the railway company has been relieved of such

undesirable conditions in connection with eight streets of the city. Had the parties intended to provide against any future proceeding being instituted by the city to cross at grade at any of the eight remaining streets, apt language would have been used in the contract to so stipulate. However, the parties expressly agreed to the contrary—that the city was not qualifying or restricting its lawful rights to exercise all powers conferred upon it by statutes then existing or thereafter enacted. Not only must the contract be so construed as to carry out the purposes intended to be accomplished by the railway company, but also to preserve the rights plainly reserved to the city. Apt language could have been used by the parties whereby the railway company was to be placed *in statu quo* if the city should in the future determine that the convenience and necessities of the public required the establishment of additional grade crossings, but this was not done, and we can not make a contract for the parties.

It is quite evident that the provision of the contract whereby the railway company agreed to pay its pro rata assessment per abutting foot front for improving and paving Cottage Grove avenue, from Florida avenue to Midlothian boulevard, in an amount not exceeding a total of $25,000, was for the benefit of the railway company and not against its interest, in that this provision set up a limit to assessments for that purpose which otherwise may lawfully have exceeded $25,000. In fact the railway company has not paid more than its pro rata assessment for paving Cottage Grove avenue between the points named; hence the company has been deprived of nothing by way of street assessments because of the provisions of this contract. Had the parties intended that the city was to do more than repeal all legislation theretofore enacted looking to the appropriation of the fourteen streets crossing the tracks of the railway company by abandonment by the city of the appropriation proceedings theretofore insti-

tuted for that purpose, apt language would have been incorporated in the agreement. It is not claimed that at that time the railway company was induced by any fraudulent representations to enter into this contract; nor has the subsequent action of the city warranted any such inference.

It is not now within the power of the city to establish grade crossings except by and with the approval of the Common Pleas Court. We find nothing in the contract which will now prevent the city from instituting the necessary proceedings for the establishment of grade crossings at such streets as are named in the petition for a declaratory judgment herein; and we further find that the institution of such proceedings will not be a breach of the contract of April 26, 1930, and will not entitle the railway company to damages as for a breach thereof. Further, we find that the city is not required before the institution of such proceedings to make restitution to the railway company of any part of the street paving assessments paid by it or otherwise to place the railway company *in statu quo,* that is, in position to demand and receive compensation from the city for the rights and easements conveyed by the railway company to the city for the crossings at Lucius avenue, Hilton avenue, Florida avenue, Boston avenue, Ravenwood avenue, or Lowell avenue, leaving the parties subject to such rights and obligations as may be provided by law in connection with the contemplated action of the city to cross the railway company's tracks and right of way at grade at Philadelphia avenue, Brooklyn avenue, and Avondale avenue, unhampered and unrestricted by any of the provisions of the contract of April 26, 1930.

*Decree accordingly.*

CARTER and PHILLIPS, JJ., concur.